# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WARREN HAMILTON, JR., | § | Case No. _____ |
| *Plaintiff,* | § | |
| | § | **PLAINTIFF'S** |
| | § | **ORIGINAL COMPLAINT** |
| v. | § | |
| DANIEL HERNANDEZ, | § | **DEMAND FOR TRAIL BY JURY** |
| TENTHOUSAND PROJECTS, LLC, and | § | |
| UMG RECORDINGS, INC. | § | |
| *Defendants.* | § | |

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW PLAINTIFF Warren Hamilton, Jr.  ("**Plaintiff**" or "**Hamilton**") and files this original complaint against Defendants Daniel Hernandez, TenThousand Projects, LLC, and UMG Recordings, Inc. (collectively, the "**Defendants**") and alleges as follows:

## I.

## <u>NATURE OF THE ACTION</u>

1.      Plaintiff Warren Hamilton, Jr. ("**Hamilton**") is a rap and hip-hop artist. Hamilton is the senior user of the mark SIX9 that Hamilton has used in interstate commerce to promote and sell his goods and services in the entertainment industry.

2.      Conversely, Defendant Daniel Hernandez ("**Hernandez**"), who is also rap and hip-hop artist, subsequently started to use the infringing mark, 6IX9INE, to identify Hernandez's goods

and services in the entertainment industry. Upon information and/or belief, TenThousand Projects, LLC ("**TenThousand Projects**") and UMG Recordings, Inc. ("**UMG**") also acted in concert with Hernandez in the sale of the same or similar goods and services as Hamilton that bear the infringing mark, 6IX9INE.

3.      Accordingly, Plaintiff Warren Hamilton, Jr. brings this action for trademark infringement and unfair competition pursuant to Lanham Act, 15 U.S.C. § 1125(a).

## II.

## PARTIES

4.      Plaintiff Warren Hamilton, Jr. ("**Hamilton**") is an individual residing at 1235 Stoneybook Drive, Conway, SC 29526.

5.      Defendant Daniel Hernandez ("**Hernandez**") is an individual residing at 1650 Broadway, Suite 505A, New York, NY 10019.

6.      Defendant TenThousand Projects, LLC ("**TenThousand Projects**") is a California limited liability company with a principal address of 1880 Century Park East #1600, Los Angeles, CA 90067. TenThousand Projects registered agent is Eresidentagent, Inc., 7801 Folsom Blvd., Suite 202, Sacramento, CA 95826. TenThousand Projects is an independent record label.

7.      Defendant UMG Recordings, Inc. ("**UMG**") is a Delaware corporation with a principal place of business and operational headquarters located at 2220 Colorado Ave, Santa Monica, California, 90404. Also known as Universal Music Group, UMG is one of the world's largest recorded music and publishing companies and is considered one of the "Big Three" Record labels, along with Sony Music and Warner Music Group. The registered agent of UMG is the Corporation Trust Company located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

## III.

### JURISDICTION

8.      The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1338 because the suit arises under the Lanham Act, specifically 15 U.S.C. § 1125(a) and further seeks damages under 15 U.S.C. § 1117(a).

## IV.

### VENUE

9.      Venue is proper in this district under 28 U.S.C. § 1391 because Defendant resides and/or does business in this district.

## V.

### CONDITIONS PRECEDENT

10.      All conditions precedent have been performed or have occurred.

## VI.

### FACTS

***Background of Warren Hamilton and his use of the SIX9 mark***

11.      Warren Hamilton, Jr. is a recording and live performance artist and musician. Hamilton specifically releases music in the rap and hip-hop genres. Hamilton has been using his SIX9 mark for years to identify himself as the source of his goods and services sold in the entertainment industry, specifically in the nature of audio and/or video recordings, live music

performances, production of audio and/or visual musical recordings, as well on ancillary merchandise goods (including his clothing goods).

12.      Hamilton first began using his SIX9 mark when he started performing live music shows in 2007. Since then, Hamilton has performed numerous live musical performances using his SIX9 mark throughout the United States in numerous states including but not limited to South Carolina, Tennessee, Alabama, Georgia, North Carolina, Kentucky, Florida, and Mississippi.

13.      Hamilton has used his SIX9 mark to also perform and record with famous and well-known hip-hop and rap artists such as Shawty Lo, 2 Chainz, Lil Wayne, Metro Boomin, Stoopidbeatz, and Shawty Redd.

14.      Hamilton has expended substantial time, money, and resources marketing, advertising, and promoting his SIX9 mark to sale his goods and services through various platforms including but not limited to his website (www.six9music.com), online music stores and digital services providers (e.g., Google Play, iTunes and Amazon Music), social media platforms (e.g. Twitter), and tangible paper sources (e.g. distribution of flyers and posters). Hamilton exploits and distributes his music worldwide through online music stores and digital service providers.

15.      Hamilton has released and published the following musical recordings using his SIX9 mark:

- "Phantom and Ferrari", "Nigga with the Money", and "Splurge" singles were released on June 14, 2013;

- "The Streets Love Me" single was released on August 27, 2013;

- "Black" single was released on June 18, 2014;

- "Stove" single was released on August 5, 2015;

- "All My Life" single was released on May 24, 2016;

- "Time" single was released on June 1, 2016;

- "Outro" single was released on July 24, 2017;

- "Dreamer" single was released on October 15, 2018;

- *SIX Mixtape* album was released on July 2, 2021;

- *Black Mixtape* album was released on July 17, 2021;

- *Dirt Road Dreams* album was released on July 26, 2021;

- *Born Alone* album was released on July 27, 2021;

- "Dope Lines" single with K-Bird and Y.D. was released on October 2, 2021; and

- "Fallen Solider" single was released on January 26, 2022.

16.     Hamilton also uses his SIX9 mark to market and sell clothing goods in promotion of his artistic career.

### *Registration History of Hamilton's SIX9 Mark*

17.     On March 31, 2014, Hamilton applied for federal registration of his trademark SIX9 in class 41 for "entertainment services in the nature of music and video performances; Production of musical sound recording; Production of musical videos." The USPTO assigned serial number 86237502 to Hamilton's SIX9 application.

18.     On October 28, 2014, the USPTO, after review and approval of Hamilton's application for registration and after publication for opposition, granted registration of Hamilton's SIX9 mark (serial number 86237502) and assigned registration number 4628568 to the registered mark.

19.     On June 4, 2021, the USPTO canceled Hamilton's registration of the SIX9 mark

(Reg. No. 86237502) when Hamilton inadvertently failed to timely file his required section 8 declaration to maintain such federal trademark registration.

20.     When Hamilton realized that he had lost his federal registration of his SIX9 mark (Reg. No. 86237502), Hamilton immediately reapplied for registration of his SIX9 mark (Serial No. 90800431) on June 24, 2021.

21.     On March 28, 2022, the USPTO's examiner issued a non-final office action on Hamilton's application for the SIX9 mark (Serial No. 90800431), because according to the examiner Hamilton's description of his goods and services in such application is indefinite and needs to be further clarified. Accordingly, as of the filing of this pleading, Hamilton has responded to address the USPTO examiner's non-final office action.

22.     Regardless of the registration status of the SIX9 mark, Hamilton's widespread, continuous, and exclusive use of the SIX9 mark in commerce to identify Hamilton's' goods and services in the entertainment industry evidences that Hamilton, at the very least, owns the trademark SIX9 with valid and subsisting common law rights to his SIX9 mark.

### Background of Daniel Hernandez
### and Defendants' subsequent use of the 6IX9INE mark

23.     Like Hamilton, Defendant Daniel Hernandez ("Hernandez") is rapper and hip-hop artist.

24.     Upon information and belief, sometime on or around 2014, Hernandez decided to become a rapper and hip-hop artist and began referring to himself and selling his goods and services in the entertainment industry as "Tekashi69."

25.     Upon information and belief, in 2015, Hernandez pled guilty to a crime involving the use of a child in a sexual performance. Upon information and belief, because of such

conviction, Hernandez sometime thereafter decided to stop referring to himself as Tekashi69 and instead began rebranding himself as 6IX9INE. Hernandez even had the numerals "6" and "9" tattooed to cover half of his forehead.

26.     Upon information and belief, Hernandez's first used the 6IX9INE mark in the sale of an audio recording on November 10, 2017, when Hernandez released his single entitled "GUMMO".  Upon information and/or belief, Hernandez licensed the use of the 6IX9INE mark to TenThousand Projects and UMG. Upon information and/or belief, TenThousand Projects and UMG released and exploited the musical recordings of Hernandez under the 6IX9INE mark.

27.     Following the release of "GUMMO", Hernandez's popularity and association as 6IX9INE in the entertainment industry began to surge, and the Defendants continued to release and exploit more new music using the infringing mark 6IX9INE. The Defendants made millions of dollars from the use of the 6IX9INE mark.

28.     Despite Defendants' notice of Hamilton's senior use and trademark registration of SIX9, Defendants have continued to adversely use the infringing 6IX9INE mark in the sale of Hernandez's musical goods and services in commerce.

29.     Defendants' subsequent and adverse use of the 6IX9INE mark to sell Hernandez's goods and services in the entertainment industry has caused confusion in the marketplace and injured and stifled Hamilton's career in the entertainment industry. Many rap and hip-hop consumers have erroneously accused and criticized Hamilton of stealing Hamilton's SIX9 mark from Hernandez. Many rap and hip-hop consumers have also mistakenly attended Hamilton's live performance shows thinking that Hernandez was going to be performing. Many music promoters and booking agents have refused to book live performance shows featuring Hamilton because his trademark SIX9 is so confusingly similar or the same as Defendants' infringing 6IX9INE mark.

Accordingly, Hamilton's entire career as a recording artist, performer, and entertainer has been injured and stifled by Defendants' infringing, subsequent, and adverse use of the 6IX9INE mark.

### *Registration history of the 6IX9INE mark*

30.     As previously mentioned, from October 28, 2014 to June 2, 2021, Hamilton had a federal registration on his SIX9 mark (Reg. No.  86237502) in class 41 for "entertainment services in the nature of music and video performances; Production of musical sound recording; Production of musical videos."

31.     On February 24, 2020, while Hamilton's SIX9 mark appeared active on the federal registry, Daniel Hernandez submitted a section 1(a) in-use application for the registration of 6IX9INE (Serial No. 88808682) in class 25 for "Clothing, namely, t-shirts, shirts, tops, hoodies, sweatshirts, hooded sweat shirts, short-sleeve t-shirts, long-sleeve t-shirts" and in class 41 for "Entertainment services, namely, audio and video recording services; Audio and video production, namely, mastering sequencing, editing and mixing of compact discs, phono records, cassettes, electronic recordings and other mediums of recording music; Entertainment services by a musical artist and producer, namely, musical composition for others and production of musical sound recordings; Production of sound and music video recordings; Entertainment services in the nature of production of motion pictures, television shows, multimedia entertainment content; Entertainment, namely, live music concerts; Music composition for others; Music publishing; Entertainment services, namely, live, televised and movie appearances by a professional entertainer; Entertainment services by a musical artist and producer, namely, musical composition for others and production of musical sound recordings; Entertainment services, namely,

performances and public appearances by a live musical artist."[1]

32.    On May 12, 2020, the USPTO issued a non-final office action refusing registration of the proposed 6IX9INE mark (Serial No. 88808682) based in part on likelihood of confusion with Hamilton's registered mark SIX9 (Reg. No. 4628568).

33.    On November 10, 2020, Hernandez responded to such non-final office action arguing that there was no likelihood of confusion with Hamilton's registered mark.

34.    On December 1, 2020, the USPTO, by and through its examiner Susan Lawrence, issued a final office action again refusing registration of the proposed 6IX9INE mark based on a likelihood of confusion with Hamilton's SIX9 mark.

35.    On June 1, 2021, Hernandez filed a Request for Reconsideration after the Final Office Action was issued, again arguing that there was no likelihood of confusion with Hamilton's registered SIX9 mark.

36.    As mentioned, on June 4, 2021, the USPTO canceled Hamilton's registered SIX9 mark when Hamilton inadvertently failed to timely file his section 8 declaration to maintain Hamilton's federal registration of the SIX9 mark.

37.    Nevertheless, on or before June 18, 2021, Hamilton called Hernandez's attorney and told Hernandez's attorney that Hamilton was the senior user of the SIX9 mark, that Hamilton is still using his SIX9 mark, that Hernandez's use of the 6IX9INE mark is infringing Hamilton's senior rights to the SIX9 mark, and that Hernandez needs to stop using the 6IX9INE mark or obtain a license from Hamilton.

38.    Despite such actual notice given by Hamilton to Hernandez's attorney, on June 21,

---

[1] Hernandez also filed a trademark registration application for "TEKASHI69" (Serial No. 88808679) on February 24, 2020 for the same or substantially similar products and services appearing his aforementioned 6IX9INE application (Serial No. . 88808682). For the avoidance of any doubt, Hamilton's action before this Court concerns only Defendants' use of the 6IX9INE mark.

2021, while Hernandez was awaiting a response from the USPTO to Hernandez's Request for Reconsideration after Final Office Action, Hernandez's attorney sent an email to USPTO examiner Susan Lawrence, informing the USPTO's examiner that Hamilton's SIX9 mark had been canceled and then fraudulently suggested to the examiner that the likelihood of confusion refusal was now moot due to such cancellation when in fact Hernandez and his attorneys' knew that Hamilton was still using the SIX9 mark and opposed Hernandez's use of the 6IX9INE mark. The failure of Hernandez's attorney to disclose Hamilton's continued use of the SIX9 mark and his opposition to Hernandez's use of the 6IX9INE mark to the USPTO's examiner violated the declaration given by Hernandez's attorney's in the registration application of the 6IX9INE mark, which states in part: "To the best of signatory's knowledge and belief, no other persons… have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

39.     As a result of Hernandez's and Hernandez's attorney's intentional and reckless disregard for Hamilton's continued use of the SIX9 mark and failure to inform the USPTO of such continued use, Hernandez's application for the 6IX9INE mark was published for opposition on July 27, 2021.

40.     Thereafter, Hamilton filed a notice of opposition to Hernandez's pending registration of the 6IX9INE mark (Serial No. 88808682) in Proceeding Number 91271966 before the United States Trademark Trial and Appeal Board (the "**Proceeding**"). In the Proceeding, Warren Hamilton, Jr. opposes the registration of the 6IX9INE mark by Hernandez as identified in Serial No. 88808682 pursuant to Section 2(d) of the Trademark Act based a likelihood of confusion with Hamilton's priority of use of the mark SIX9 in commerce. Warren Hamilton, Jr. also opposes

the registration of the 6IX9INE mark by Hernandez as identified in Serial No. 88808682 due to fraud on the application and fraud in the procurement of the application.

41.    Hamilton now brings this civil action against the Defendants before this Federal District Court to further enforce Hamilton's trademark rights and remedies under federal law.

## VII.

## COUNT 1

## UNFAIR COMPETITION UNDER LANHAM ACT

## BASED ON LIKELIHOOD OF CONFUSION

## (15 U.S.C. § 1125(a))

42.    Hamilton incorporates by reference herein as if fully set forth all the statements made in paragraphs 1-41 above.

43.    Common law unfair competition or trademark infringement claims and claims under 15 U.S.C. § 1125(a) cover cases where the infringed trademarks are not registered, and they allow the court more leeway to exercise its equitable powers than a federal statutory trademark infringement claim does. *Major League Baseball Promotion Corp. v. Colour-Tex, Inc.*, 729 F. Supp. 1035, 1039 (D.N.J. 1990) (*citing Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg. Co.*, 510 F.2d 1004, 1010 (5th Cir.), *cert. denied*, 423 U.S. 868 (1975); *Holiday Inns, Inc. v. Trump*, 617 F. Supp. 1443, 1465 (D.N.J. 1985); *Estate of Presley v. Russen*, 513 F. Supp. 1339, 1376 (D.N.J. 1981)).).

44.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides, in relevant part, that:

Any person who, on or in connection with any goods or services, or

> any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(1)(a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

45.    "To prevail on a trademark infringement claim under…[15 U.S.C. §1125(a)], the trademark's possessor must prove two elements: (1) that its trademark is valid and entitled to protection and (2) that the contested use of the trademark is likely to cause confusion among consumers." *Paco Sport, Ltd. v Paco Rabanne Parfums*, 86 F Supp 2d 305, 309-310 (S.D.N.Y. 2000) (*citing Time, Inc. v. Petersen Publ'g Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999)).

46.    "It is well settled in this Circuit that in evaluating the likelihood of confusion, courts consider the eight factors established by Judge Friendly in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), ("**the Polaroid factors**"). These factors include: (1) the strength of the senior user's trademark; (2) the degree of similarity between the contested trademarks; (3) the competitive proximity of the products; (4) the likelihood that the senior user will "bridge the gap" by entering the junior user's market; (5) actual confusion; (6) the junior user's good faith in adopting its mark; (7) the quality of the junior user's product; and (8) the sophistication of relevant consumers." *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 310 (S.D.N.Y. 2000).

## A.  SIX9 is a valid trademark and entitled to protection

47.    "Assessment of a trademark's protectability begins with appraising the

trademark's inherent capacity to identify the source of a product and classifying the trademark in one of four categories of inherent distinctiveness. These categories, outlined in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9-11 (2d Cir. 1976), are generic, descriptive, suggestive, and arbitrary/fanciful. Generic terms are never entitled to protection. Suggestive, arbitrary and fanciful terms, on the other hand, are inherently distinctive and generally entitled to protection. Descriptive terms are not inherently distinctive, but are nonetheless entitled to protection if they acquire secondary meaning in the marketplace." *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 310 (S.D.N.Y. 2000) (*citing PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 561-62 (2d Cir. 1990); *Abercrombie & Fitch*, 537 F.2d at 9-11.).

48.     Plaintiff's mark, 6IX9, is an arbitrary or fanciful term that is inherently distinctive and entitled to the highest degree of protection.

**B. The contested use of 6IX9INE is likely to cause confusion as confusion is inevitable.**

49.     Additionally, Defendants' use of the infringing 6IX9INE mark is confusingly similar to Hamilton's use of the SIX9 Mark. The *Polaroid* factors weigh in favor of finding of confusion.

**Factor 1: Strength of Hamilton's Trademark SIX9**

50.     This Court has held:

> The courts have defined the strength of a trademark as its inherent and acquired capacity to identify the source of a product. *See Time*, 173 F.3d at 117. "The strength of a mark is directly related to likelihood of confusion, for the stronger the mark, the more likely that the consumer will associate it with the familiar purveyor." *H. Lubovsky, Inc. v. Esprit de Corp.*, 627 F. Supp. 483, 486-87 (S.D.N.Y. 1986). In analyzing this *Polaroid* factor, the courts consider both the inherent distinctiveness of the trademark and its

> strength acquired through use in the marketplace. *See Time*, 173
> F.3d at 117-18 (*citing Streetwise Maps, Inc. v. VanDam, Inc.*, 159
> F.3d 739, 743-44 (2d Cir. 1998)). The analysis involves many of the
> same factors that initially determine the trademark's protectability,
> such as the classification of the trademark on
> the <u>Abercrombie</u> continuum as generic, descriptive, suggestive, or
> arbitrary/fanciful and the existence of secondary meaning. *See id.*

*Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 311-12 (S.D.N.Y. 2000).

51.     Plaintiff's mark, SIX9, is an arbitrary and fanciful mark, and is therefore inherently distinctive.

52.     Additionally, because Plaintiff's SIX9 mark has been registered, it is presumed inherently distinctive. "The registration of a trademark is also relevant to the assessment of the strength" as "registered marks are presumed to be distinctive." *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 312 (S.D.N.Y. 2000) (citing *Lois Sportswear*, 799 F.2d at 871).

53.     Thus, this factor weighs in favor of Plaintiff and a finding of likelihood of confusion.

### Factor 2: Similarity of the Contested Trademarks

54.     This Court has held:

> "In analyzing this factor, "the courts consider whether the similarity
> of the marks is likely to cause confusion among potential
> customers." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 394
> (2d Cir. 1995). The courts have held that trademarks should be
> compared in their entirety, because "juxtaposing fragments of each
> mark does not demonstrate whether the marks as a whole are
> confusingly similar." *Universal City Studios, Inc. v. Nintendo Co.*,
> 746 F.2d 112, 117 (2d Cir. 1984). In analyzing the trademarks'
> similarity, the courts appraise the overall impression created by the
> trademarks, considering the context in which the trademarks appear
> and "the totality of factors that could cause confusion among
> prospective purchasers." *Gruner + Jahr USA Publ'g v. Meredith
> Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993).

*Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 315 (S.D.N.Y. 2000)

55.     Defendants' use of the 6IX9INE mark is confusingly similar in appearance, sound, connotation and overall commercial impression to Hamilton's SIX9 mark.

56.     Defendants' 6IX9INE mark and Hamilton's SIX9 mark are highly similar in appearance as both marks contain letters and numbers. The first four characters of each mark are nearly identical. Defendants' mark begins "6IX9" whereas Hamilton's mark begins "SIX9". Hernandez's substitution of a "6" for an "S" is a distinction without a difference because the appearance of numerical "6" as used in Defendants' mark looks very similar to the letter "S" when followed by the characters "I" and "X" to spell the word "SIX", which is the first word in Hamilton's mark and has the equivalent meaning of the written number "6" appearing in Defendants' mark. Additionally, the later halves of the two marks are nearly identical as both marks use the numerical "9". The fact that Defendants' mark uses a numerical "9" with the characters "I", "N", and "E" is again a distinction without a difference, because the additional letters used to spell the word "nine" is the equivalent meaning of the number "9" and is already understood in both marks regardless of how it appears. Thus, both marks are highly similar in appearance.

57.     More importantly, the sound, connotation, and commercial impression of the two marks are even more important in the present action than any nuanced differences in the appearance, because the goods and services that are being sold in commerce by Defendants and Hamilton are music-related, and music by its very nature is auditory and not necessarily visual. Therefore, music consumers do not always have the benefit of seeing the marks spelt out, nor will the average consumer necessarily realize that there is a difference in the sources of the goods and services offered by Defendants and Hamilton when encountering the marks in commerce. Thus,

confusion is inevitable.

58.     Hamilton's SIX9 mark and Defendants' infringing 6IX9INE mark are pronounced exactly the same.  Hamilton's SIX9 mark is pronounced "siks nīn" – as is Defendants' infringing 6IX9INE mark.  Thus, the marks are phonetic equivalents and sound the same; and similarity in sound alone may be sufficient to support a finding that the marks are confusingly similar.  *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988); *see In re 1ˢᵗ USA Realty Prof'ls, Inc.*, 84 USPQ2d 1581, 1586 (TTAB 2007).

59.     Hamilton's SIX9 mark and Defendants' infringing 6IX9INE mark have the same meaning or connotation. "The meaning or connotation of a mark must be determined in relation to the named goods or services." *See* TMEP § 1207.01 (b)(v). "The focus is on the recollection of the average purchaser who normally retains a general, rather than specific, impression of trademarks." *See id.* (*citing In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016) (*citing Spoons Rests. Inc. v. Morrison Inc.*, 23 USPQ2d 1735, 1741 (TTAB 1991), *aff'd per curiam*, 972 F.2d 1353 (Fed. Cir. 1992)); *In re C.H. Hanson Co.*, 116 USPQ2d 1351, 1353 (TTAB 2015) (citing *Joel Gott Wines LLC v. Rehoboth Von Gott Inc.*, 107 USPQ2d 1424, 1430 (TTAB 2013)); *see also San Fernando Elec. Mfg. Co. v. JFD Electronics Components Corp.*, 565 F.2d 683, 196 USPQ 1, 2-3 (CCPA 1977) ("Obviously, the marks here are constructed of old linguistic elements, but they must be considered as wholes, and not on the basis of side-by-side comparison, and in the light of the fallibility of memory."); *Neutrogena Corp. v. Bristol-Myers Co.*, 410 F.2d 1391, 161 USPQ 687, 688 (CCPA 1969) (many consumers "may have but dim recollections from having previously seen or heard one or the other of the involved marks.").). Here, both Hamilton's SIX9 mark and Defendants' 6IX9INE mark have the same numerical meanings and are used to identify the source of the same or substantially similar goods and services. According, both marks

have the same connotation.

60.     Both marks also create the same overall commercial impression, i.e., of the number "6" followed by the number "9." The fact that they are both a combination of numbers and letters does not change the meaning nor commercial impression of the marks – nor does it distinguish one from the other.  Consumers are likely to remember them as being the same and mistakenly believe that they identify a common source for the services.  When comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." *Cai v.Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b).  The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks. *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014); *Geigy Chem. Corp. v. Atlas Chem. Indus., Inc.*, 438 F.2d 1005, 1007, 169 USPQ 39, 40 (C.C.P.A. 1971)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

61.     Finally, Defendants' mark 6IX9INE and Hamilton's mark SIX9 are both in standard character format, meaning that both marks may be used in any manner – including in a stylization identical to that of the other.  A mark in typed or standard characters may be displayed in any lettering style; the rights reside in the wording or other literal element and not in any particular display or rendition. *See In re Viterra Inc.*, 671 F.3d 1358, 1363, 101 USPQ2d 1905, 1909 (Fed. Cir. 2012); *In re Mighty Leaf Tea*, 601 F.3d 1342, 1348, 94 USPQ2d 1257, 1260 (Fed.

Cir. 2010); 37 C.F.R. §2.52(a); TMEP §1207.01(c)(iii).

62.    Accordingly, Defendants' 6IX9INE mark is confusingly similar in appearance, sound, connotation and overall commercial impression to Hamilton's SIX9 mark. Indeed, USPTO examiner Sue Lawrence in her final office action dated December 1, 2020 also found that Hernandez's proposed 6IX9INE mark was confusingly similar in appearance, sound, connotation, and overall commercial impression to Hamilton's 6IX9 mark. Therefore, this factor weighs in favor of Plaintiff and a finding of likelihood of confusion.

### Factor 3: Competitive Proximity of the Produces

63.    "Under this *Polaroid* factor, the courts examine "whether and to what extent the two products compete with each other," based on "the nature of the products themselves and the structure of the relevant market." *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 316 (S.D.N.Y. 2000)(*citing Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996)).

64.    In this instance, Defendants' goods and services are highly related to, if not identical to, or, at the very least, encompassed within, Hamilton's goods and services. Both marks are used to market and sell the same or highly similar music entertainment services, goods, and ancillary goods. Both Hamilton and Hernandez are rap and hip-hop artist artists. Both Hamilton and Defendants sell rap and hip-hop music. Both Hamilton and Defendants sell ancillary clothing merchandise in promotion of their music and entertainment career and endeavors.

65.    Thus, the goods and services of Defendants are sufficiently related to the goods and services provided by Hamilton so that confusion is likely. Indeed, USPTO examiner Sue Lawrence in her final office action dated December 1, 2020 also found that the Hernandez's and Hamilton's

services were sufficiently related in refusing registration of 6IX9INE.

66.     This factor weighs in favor of Hamilton and a finding of likelihood of confusion.

## Factor 4: Bridging the Gap

67.     This court has explained:

> This *Polaroid* factor examines the likelihood that the senior user
> will enter the junior user's market and compete with the junior user
> ("bridge the gap"). *See Streetwise Maps*, 159 F.3d at 743. The factor
> weighs in the senior user's favor either if bridging the gap is actually
> probable or if an average consumer perceives it as
> probable. *See Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d
> 955, 963 (2d Cir. 1996); *Lois Sportswear*, 799 F.2d at 874. The
> actual probability of bridging the gap is relevant because the
> trademark law protects, in part, the senior user's interest in being
> able to expand into a related field in the future. *See Hormel Foods
> Corp. v. Jim Henson Prods*, 73 F.3d 497, 504 (1996). The
> perception of consumers, on the other hand, affects the likelihood of
> confusion, because if consumers perceive bridging the gap as
> probable, they are more likely to believe that the junior user's
> products emanate from the senior user. *See Lang*, 949 F.2d at
> 582; *McGregor-Doniger*, 599 F.2d at 1136 ("Because consumer
> confusion is the key, the assumptions of the typical consumer,
> whether or not they match reality, must be taken into account.").

*Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 318 (S.D.N.Y. 2000).

68.     This factor warrants little weight since Hamilton and Defendants already operate in

the same marketplace. *See*, *Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883, 898 (N.D. Cal. 2010).

## Factor 5: Actual Confusion

69.     Where reverse confusion is alleged, it "is likely to cause consumers to believe,

erroneously, that the goods marketed by the prior user are produced by the subsequent user."

*Wyndham Co. v. Wyndham Hotel Co.*, 176 Misc. 2d 116, 121, 670 N.Y.S.2d 995, 999 (Sup. Ct.

1997).

70.     Many rap and hip-hop consumers have erroneously accused and criticized Hamilton of stealing Hamilton's SIX9 mark from Hernandez. Many rap and hip-hop consumers have also mistakenly attended Hamilton's live performance shows thinking that Hernandez was going to be performing. Many music promoters and booking agents have refused to book live performance shows featuring Hamilton because his trademark SIX9 is so confusingly similar or the same as Hernandez's infringing 6IX9INE mark. Accordingly, Hamilton's entire career as a recording artist, performer, and entertainer has been injured and stifled by Defendants' infringing, subsequent, and adverse use of the 6IX9INE mark.

71.     Accordingly, this factor weighs in favor of Hamilton and a finding of likelihood of confusion, because there is actual reverse confusion occurring in the marketplace.

### Factor 6: Junior User's Good Faith

72.     This Court has explained:

> This factor examines whether the junior user "adopted its mark with the intention of capitalizing on [the senior user's] reputation and goodwill and any confusion between his and the senior user's product." *Sports Auth.*, 89 F.3d at 964 (quoting *Lang*, 949 F.2d at 583). Knowledge of the senior user's mark, while relevant to this determination, "does not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Arrow Fastener*, 59 F.3d at 397. Selection of a mark that reflects the product's characteristics or attracts customers, on the other hand, indicates good faith. *See Streetwise Maps*, 159 F.3d at 746. Additional relevant factors may include a request for a trademark search, reliance on the advice of counsel, *see Lang*, 949 F.2d at 583, and the benefits the junior user could derive from consumer confusion. *See Hormel Foods*, 73 F.3d at 505.

*Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 324 (S.D.N.Y. 2000).

73.     Defendants adopted the 6IX9INE mark in bad faith. Hamilton's 6IX9 mark was on federal register in class 41 for entertainment services at the time that Defendants' first started

using the 6IX9INE mark. Therefore, Defendants, at the very least, had constructive notice of Hamilton's mark when Hernandez's first started using the mark. Additionally, Hernandez also had actual notice of Hamilton's SIX9 mark when Hernandez attempted and/or first considered to apply for federal registration of the infringing 6IX9INE mark.

74.     Accordingly, this factor weighs in favor of Hamilton and a finding of likelihood of confusion.

### Factor 7: Quality of Junior User's Products.

75.     This Court has explained:

> The courts have held that the quality of the junior user's products can be relevant to trademark infringement analysis in two ways. First, inferior quality of the junior user's products increases the senior user's interest in preventing confusion, because associations with an inferior product tarnish the senior user's reputation. *See Hormel Foods*, 73 F.3d at 505. Second, differences in the products' quality may affect the likelihood of confusion. *See id.* The courts have found that, when the senior and the junior users' products are otherwise similar, comparable quality may support the consumers' belief that the products emanate from the same source and thus contribute to consumer confusion.

*Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 325-26 (S.D.N.Y. 2000).

76.     Both Hamilton and Defendants are producing same or highly similar goods and services that are of the same commercial quality.

77.     This factor weighs in favor of Hamilton and a finding of likelihood of confusion.

### Factor 8: Sophistication of Consumers

78.     This Court has explained:

> This factor examines the sophistication of typical consumers and the level of care they exercise when purchasing the products at

issue. *See Sports Auth.*, 89 F.3d at 965. Because people generally exercise greater care in purchasing expensive products than in purchasing cheap products, purchasers of expensive products are usually less likely to be confused. *See McGregor-Doniger*, 599 F.2d at 1137; *Edison Bros. Stores, Inc., v. Cosmair, Inc.*, 651 F. Supp. 1547, 1561 (S.D.N.Y. 1987).

…

Usually, greater sophistication of consumers reduces the likelihood of confusion. *See Centaur Communications*, 830 F.2d at 1228. In some cases, however, greater sophistication may increase the likelihood of confusion. For example, in *Centaur Communications*, the Second Circuit suggested that greater sophistication could increase the likelihood of confusion if the products or the marks in question were identical. *Id.* at 1228 (holding that in that case, greater sophistication of the consumers "decreased the likelihood of confusion since neither the products nor the marks [were] identical").

*Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 327 (S.D.N.Y. 2000).

79.    The consumption of music in the marketplace is based on "impulse" purchases driven by a person's emotion or feeling at a particular moment in time. When consumers hear a song that they like, they listen to it, stream it, or buy it in the moment. Consumers do not make careful considerations when listening, buying, or streaming music. When deciding to listen to a song, consumers simply ask themselves the question: do I like this song or do I want to listen to this song. If consumers do not like the song or do not want to listen to the song, they simply skip to the next song. Thus, when listening to music, consumers carelessly scroll and explore music on various platforms that they may use to listen to music such as Spotify, Apple Music, YouTube, Pandora, and Amazon Music. Consumers often let the platforms choose the music that the listener enjoys on such platform's playlists. Accordingly, the music consumer may not even have a particular artist in mind when the consumer wants to listen to music. The consumer may just want to hear

music of a particular genre when they turn on the radio or listen to a playlist. Accordingly, if a DJ on the radio or a playlist or podcast announces that this is a song by SIX9 or 6IX9INE, the average consumer doesn't know by the announcement of the artist's name if that song is going to be by Hamilton or Hernandez since each mark has the same exact pronunciation and meaning. The same is true if a consumer saw a concert poster or heard an advertisement using the mark "SIX9" or "6IX9INE." Instead, the average music consumer who is an impulse buyer is still going to be confused on whether the goods and services sold as SIX9 or 6IX9INE emanate from the same source, because they travel in the same trade channels. Moreover, the fact that purchasers are sophisticated or knowledgeable in a particular field does not necessarily mean that they are sophisticated or knowledgeable in the field of trademarks or immune from source confusion. *See* TMEP §1207.01(d)(vii); *see, e.g., Stone Lion Capital Partners, LP v. Lion Capital LLP,* 746 F.3d. 1317, 1325, 110 USPQ2d 1157, 1163-64 (Fed. Cir. 2014); *Top Tobacco LP v. N. Atl. Operating Co.*, 101 USPQ2d 1163, 1170 (TTAB 2011). And here, where the marks are identical in sound, meaning, and overall commercial impression, and the goods and services are highly related, if not the same, confusion as to the source of such goods and services is indeed likely and inevitable.

80.     Thus, this factor weighs in favor of Hamilton and a finding of likelihood of confusion.

### Summary of *Polaroid* Factor Test

81.     Accordingly, because Hamilton's SIX9 mark is a valid trademark and all of the *Polaroid* factors weigh in favor of finding a likelihood of confusion, Defendants' subsequent use of 6IX9INE to sell the same or highly similar goods and services is a

violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## VIII.

## COUNT 2

**Deceptive Acts and Practices Unlawful in Violation of the New York General Business Law**

**(N.Y. Gen. Bus. Law §§ 349 and 350)**

82. Plaintiff hereby repeats and each and every allegation set forth in in paragraphs 1 to 81 above as if fully set forth herein.

83. New York General Business Law, Section 349 states, in relevant part, that: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

84. New York General Business Law, Section 350 states, in relevant part, that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

85. Through the Defendants' importation, advertisement, distribution, offer to sell, and sale of unauthorized goods and services that are the same or substantially similar to Hamilton's goods and services and bear the trademark 6IX9INE that is same or deceivingly the same as Hamilton's SIX9 mark, the Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

86. The Defendants' deceptive acts and practices, as described herein, are materially misleading. Such acts or practices have deceived or have a tendency to deceive a material segment of the public to whom Plaintiff has directed his marketing activities, and Plaintiff

has been injured thereby.

87. By the acts described above, the Defendants have willfully engaged in deceptive acts or practices in conduct of business and furnishing of services in violation of Section 349 and 350 of the New York General Business Law.

88. The Defendants' acts have caused, and will continue to cause, irreparable injury to Hamilton. Plaintiff Hamilton has no adequate remedy at law and is thus damaged in an amount not yet determined.

## IX.

## COUNT 3

### Trademark Infringement in Violation of New York State Common Law

89.     Plaintiff Hamilton hereby repeats each and every allegation set forth in paragraphs 1 to 88 above as if fully set forth herein.

90.     Plaintiff Hamilton owns all rights, titles, and interests in and to the SIX9 mark, including all common law rights in the SIX9 trademark.

91.     The products and services sold by Defendants incorporate and use the 6IX9INE mark, which is an infringing version of Hamilton's 6IX9 mark to sell the same or highly similar goods and services as Hamilton.

92.     The Defendants use of the 6IX9INE mark was never authorized by Hamilton and has caused consumer confusion.

93.     By the acts described above, the Defendants have engaged in trademark infringements in violation of the common law of the State of New York.

94.     The Defendants' acts have caused, and will continue to cause, irreparable injury to

Plaintiff Hamilton. Plaintiff Hamilton has no adequate remedy at law and is thus damaged in an amount not yet determined.

## X.

## DEMAND FOR JURY

95.    Plaintiff Cuevas asserts his right under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## XI.

## PRAYER

96.  **WHEREFORE**, the Plaintiff prays:

1. For a **FINAL JUDGMENT** that:

a. the Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

b. the Defendants have engaged in deceptive acts and practices unlawful in violation of Section 349 and 350 of the New York General Business Law;

c. The Defendants have engaged in trademark infringement in violation of common law of the State of New York; and

e. that the above acts were done willfully, and/or intentionally.

2. For entry of an **ORDER** permanently enjoining and restraining the Defendants, and their officers, agents, servants, employees and attorneys and all those in active concert or participation with any of them, pursuant to 15 U.S.C. § 1116, from:

a. Using the 6IX9INE mark or any reproduction, counterfeit, copy or colorable imitation of Hamilton's SIX9 mark, including the trademark for and in connection with any goods or services not authorized by Hamilton;

b. Engaging in any course of conduct likely to cause confusion, deception or mistake, or injury to Plaintiff's business reputation;

c. Using any false description of representation, including works or other symbols tending falsely to describe or represent Defendants' unauthorized goods, services, or their packaging as being those of Hamilton, or sponsored by or associated with Hamilton, and from offering such goods into commerce;

d. Further infringing Hamilton's SIX9 trademark by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products or services or their packaging not authorized by Hamilton that bear any simulation, reproduction, counterfeit, copy or colorable imitation of Hamilton's SIX9 Trademarks including but not limited to use of the 6IX9INE mark;

e. Using any simulation, reproduction, counterfeit, copy or colorable imitation of the SIX9 Trademark and the infringing 6IX9INE mark in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products, services, or packaging in such fashion as to relate or connect, or tend to relate or connect, such products or services in any way to Hamilton, or to any goods or services sold, manufactured, sponsored or approved by, or connected with Hamilton;

f. Making any statement or representation whatsoever, or using any false

designation of origin or false description, or performing any act, which may or is likely to lead the trade or public, or individual members thereof, to believe that any products or services manufactured, distributed, or sold by the Defendants are in any manner associated or connected with Hamilton, or are sold, manufactured, licensed, sponsored, approved or authorized by Hamilton; and

g. Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action.

3. For entry of an **ORDER** requiring the Defendants to disseminate corrective advertisements in a form approved by the Court to acknowledge their violations of the law hereunder, and to ameliorate the false and deceptive impressions produced by such violations.

4. For an assessment of the **ACTUAL DAMAGES** suffered by Hamilton, trebled, and an award of all profits that Defendants have derived from using the infringing 6IX9INE mark, including trebled damages on such profits assessed, as well as costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117.

5. For **COSTS OF SUIT**, pre- and post- judgment interest, and for such other and further relief as the Court shall deem appropriate.

Date: July 20, 2022                          Respectfully submitted,

_____

David Chase LanCarte
LanCarte Law, PLLC
2817 West End Ave., Suite 126-276
Nashville, Tennessee 37203
Tel: 214-935-2430
Fax: 214-934-2450
chase@lancartelaw.com

**ATTORNEY FOR PLAINTIFF
WARREN HAMILTON, JR.**