# EXHIBIT

# CC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,

-v-                                                      18-CR-834-04 (PAE)

DANIEL HERNANDEZ,                                        ~~SEALED~~ ORDER

             Defendant.

------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      The Court has received a letter dated February 9, 2022 from Lance Lazzaro, Esq., counsel for defendant Daniel Hernandez, asking the Court to terminate Mr. Hernandez's five-year term of supervised release. Mr. Hernandez began to serve that term less than 23 months ago, on April 1, 2020, following the Court's grant of his application for compassionate release in light of his heightened vulnerability to COVID-19. The Court has also received a letter response dated February 18, 2022 from the Government, opposing the application for early release.

      Under 18 U.S.C. § 3583(e)(1), a court may "terminate a term of supervised release and discharge the defendant at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interests of justice." 18 U.S.C. § 3583(e)(1); see also United States v. Key, 602 F.3d 492, 494 (2d Cir. 2010) ("To be eligible for termination of supervised release under 18 U.S.C. § 3583(e)(1), a defendant must establish that the termination is warranted by (1) the conduct of the defendant and (2) the interest of justice.") (internal quotation marks omitted). In deciding whether early termination is appropriate, the Court must consider many of the same factors as those considered in sentencing, including: the nature and circumstances of the offense; the

history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant, to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and the appropriate sentencing range; any pertinent policy statement issued by the U.S. Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3583(e)(1) (court "may, after considering the factors set forth in [18 U.S.C. §§] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)" terminate supervised release).

A court may modify a defendant's supervised release term "in order to account for new or unforeseen circumstances." *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997). But a modification in the form of early termination "is not warranted as a matter of course." *United States v. Bastien*, 111 F. Supp. 3d 315, 321 (E.D.N.Y. 2015) (citation omitted). Rather, it is appropriate "[o]nly 'occasionally' . . . when 'changed circumstances' of the defendant render the previously imposed term 'either too harsh or inappropriately tailored to serve' general punishment goals." *United States v. Olivieri*, 72 F. Supp. 3d 401, 403 (S.D.N.Y. 2014) (quoting *Lussier*, 104 F.3d at 36). Ultimately, the decision is left to the discretion of the district court. *See United States v. Johnson*, 529 U.S. 53, 60 (2000); *Lussier*, 104 F.3d at 36.

Here, the Court denies the application to terminate—or to shorten at all—the five-year term of supervised release that it ordered Mr. Hernandez to serve.

At sentencing in December 2019, the Court painstakingly explained the sentence it imposed in this complex and unusual case, and why that sentence was necessary to vindicate the § 3553(a) factors, viewed in combination. Salient here, as the Court, and the presentence report of the Probation Department, recognized, the Court's ongoing supervision of Mr. Hernandez following his release from prison would serve important purposes. These included deterring Mr. Hernandez from future criminal activity and assuring that the resources of the Probation Department are available, as needed, to assist in his successful rehabilitation and reentry. *See* Dkt. 385 ("PSR") at 52 (describing need to "monitor Hernandez's activities in the community and provide for services necessary for reentry"). Particularly in light of Mr. Hernandez's alarming, violent, and diverse history of crimes and other anti-social conduct, his history of surrounding himself with criminal elements, his youth, his tendency to impulsive action, and other aspects of his personal history, the Court judged these interests as weighty. As the Court explained, given Mr. Hernandez's history of reoffending and the temptation Mr. Hernandez might have to reoffend, the Court's supervision, and the Probation Department's guidance and monitoring, stood to deter Mr. Hernandez from future missteps, for his good and that of the public. *See* Dkt. 395 ("Sent. Tr.") at 93.

These interests remain weighty today. Defense counsel largely emphasizes that, since his release, Mr. Hernandez has complied with the law. Mr. Hernandez is to be credited for that. At the same time, such is expected of a person on supervised release. *See, e.g., Karacsonyi v. United States*, 152 F.3d 918 (2d Cir. 1998) (tbl.) ("Full compliance, after all, is merely what is expected of all people serving terms of supervised release."); *United States v. Goldberg*, No. 12 Cr. 864 (LAP), 2021 WL 2444548, at *2 (S.D.N.Y. June 15, 2021) ("[M]ere compliance with the terms of supervised release does not amount to extraordinary circumstances that would justify

termination[.]"); *United States v. Bouchareb*, 76 F. Supp. 3d 478, 479 (S.D.N.Y. 2014) ("[F]ull compliance with the terms of supervised release is what is expected of the defendant and does not warrant early termination.") (cleaned up); *see also Whittingham v. United States*, No. 12 Cr. 0971 (RJS), 2017 WL 2257347, at *6 (S.D.N.Y. May 22, 2017) (holding that a "defendant's full compliance with the terms and conditions of supervised release, standing alone . . . is insufficient" to warrant early termination and collecting cases). And Mr. Hernandez's compliance with the law since his April 2020 release cannot be divorced from the fact that he has been under judicial supervision. The supervised release regime has given Mr. Hernandez, like other defendants, a strong incentive to abide by the law. Although the Court is hopeful that Mr. Hernandez's choice since his release to abide by the law reflects a durably matured internal compass, the Court today cannot be fully confident that, freed of judicial supervision, he would not lapse.

The Court also notes that, to date, Mr. Hernandez has performed only approximately 10 hours of the 300 hours of community service that the Court ordered him to serve as a special condition of supervised release. Sent. Tr. at 93–94; *see* Dkt. 398 (Judgment). Terminating Mr. Hernandez's term of supervised release as he requests would terminate this important aspect of his punishment and rehabilitation. Although security concerns arising from Mr. Hernandez's celebrity and well-publicized cooperation with law enforcement assuredly close off some avenues of potential community service, the Court is unpersuaded that no such avenues remain open—as reflected in the fact that Mr. Hernandez has already performed some such service.

4

Case 1:18-cr-00824-RAE   Document 634   Filed 03/02/22   Page 5 of 7



5

The Court accordingly denies Mr. Hernandez's application for early termination, or a reduction, of his five-year term of supervised release. This order is without prejudice to Mr. Hernandez's right, substantially later in the term of supervised release, to apply anew for the same or similar relief.

The Court, finally, notes that both the defense's letter and the Government's response have been filed under seal. Substantial portions of these letters are indeed properly redacted, given valid concerns articulated by the defense and addressed in the paragraph of this order that appears two paragraphs above. However, the wholesale sealing of these submissions is excessive, and inconsistent with the presumption of public access to the courts. *See Mirlis v. Greer*, 952 F.3d 51, 58–59 (2d Cir. 2020) (explaining that "[j]udicial documents," that is, "one[s] that ha[ve] been placed before the court by the parties and that [are] relevant to the performance of the judicial function and useful in the judicial process," "are subject at common law to a potent and fundamental presumptive right of public access that predates even the U.S. Constitution" and describing the three-step inquiry to determine whether and to what extent such presumption attaches) (internal quotation marks omitted); *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) ("[F]inding that a document is a 'judicial document' triggers a presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access.") (quoting *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 167 n.15 (2d Cir. 2013)). The Court accordingly directs counsel promptly to confer and to submit to the Court's chambers, by the close of business Tuesday, March 1, 2022, proposed redactions to their letters. The Court's intention is to then publicly file this order, redacting only the paragraph that appears two

paragraphs above this, and to order counsel to file publicly their submissions, with the redactions the Court authorizes.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: February 25, 2022
New York, New York